HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BERNARD GLENN,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

CASE NO. C12-5646RBL

CR09-5668RBL

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND STR DNA TESTING

THIS MATTER is before the Court on two motions filed by Petitioner Bernard Glenn: a Petition for Writ of Habeas Corpus under to 28 U.S.C. § 2255 [Dkt. #1] and a Motion for Short-Tandem Repeat (STR) DNA Testing under the Innocence Protection Act, 18 U.S.C. §3600 [Dkt. #13]. The facts of this case are well known to the parties and to the Ninth Circuit Court of Appeals. They will not be repeated here. For the following reasons, both motions are DENIED.

## I. PROCEDURAL HISTORY

### A. Pretrial Motion.

Petitioner's first trial counsel, Tom Campbell, filed a pretrial suppression motion on October 29, 2009. A month later, Ron Ness replaced Mr. Campbell as counsel, and he remained on the case through trial. He sought to withdraw as counsel on January 14, 2010. On January 20, 2010, the Court held an ex-parte hearing, and ruled that, through counsel, Glenn could file

his own motions. Glenn subsequently filed six pretrial motions. Among them were a motion to dismiss, two “responses” to the Government’s response to Glenn’s suppression motion, two additional motions to suppress, and a motion to continue the trial. The Court held a hearing on all of Glenn’s motions on February 1, 2010. The government called four witnesses, and the defense called one.

**B. The Trial and Sentencing.**

Trial commenced the next day, February 2, 2010. And the next day the jury found Mr. Glenn guilty on the lone count. On February 9, 2010, Glenn filed a pro se motion for a new trial. That motion was initially stayed, but ultimately denied at the sentencing hearing. On February 22, 2010, defendant filed a pro se motion for new counsel. That motion was granted in an ex-parte hearing on March 3, 2010, and Attorney Zenon Olbertz was appointed to represent Mr. Glenn. On June 3, 2010, Glenn filed a pro se request for an evidentiary hearing, and the Court denied that request four days later.

**C. Sentencing Hearing.**

Defendant Glenn’s sentencing hearing was held on October 1, 2010. At the hearing, the Court denied defendant’s pending motions to dismiss and for a new trial. Defendant Glenn was sentenced to 120 months custody, to be followed by three years of supervised release.

**D. Appeal.**

Glenn, still represented by Zenon Olbertz, appealed the denial of the suppression motion, challenging the admissibility of Glenn’s statements and the evidence seized from his person. On August 8, 2011, the Ninth Circuit filed an unpublished Memorandum Opinion affirming the denial of the motion to suppress. On August 17, 2011, Glenn filed another motion for new counsel. That motion was granted five days later. On August 31, 2011, Attorney Robert Gombiner entered his appearance on the appeal case. On September 20, 2011, Gombiner filed a

petition for panel rehearing. On October 7, 2011, the Ninth Circuit denied the petition for rehearing, but it also withdrew its August 4 Memorandum Opinion and submitted a new one.

In the new Memorandum Opinion, the Ninth Circuit affirmed the denial of the motion to suppress. It held that "each of those grounds [articulated by the district court] was independently sufficient for the police to search Glenn, and for the court to deny the suppression motion." The Ninth Circuit also held that, though Glenn had not briefed the issue, he was subjected to a valid probationary search.

On January 4, 2012, Glenn filed a petition for writ of certiorari. That petition was denied by the Supreme Court on May 29, 2012.

**E. Section 2255 Petition.**

On July 20, 2012, Glenn filed this pro se motion under 28 U.S.C. § 2255, having mailed the unsigned 60-page pleading from FCI Sheridan on or about July 18, 2012. On August 1, 2012, the Court's Deputy Clerk sent Glenn a memorandum letter advising him that habeas motions must be filed using the Court's form. On August 5, 2012, Glenn filled out and returned the proper Section 2255 form. His petition was filed in the District Court on August 9, 2012.

Glenn's first petition raised several claims: (1) illegal search and seizure (no probable cause warrant, or affidavit); (2) *Miranda* violation (custodial interrogation without reading *Miranda*); (3) Search warrant for mistaken identity; and (4) Probation (status of movant unknown). He also raised six issues he had not raised before: (1) Impermissible vouching; (2) Trial jury discrimination; (3) Altered serial number on firearm; (4) DNA evidence; (5) Cumulative effect [of] prosecutorial misconduct; and (6) Ineffective [assistance of] counsel.

On or about September 10, 2012, Glenn filed an "Amended Petition." Glenn claimed that it "adds no new claim" and "merely explains his ineffective assistance of counsel claim in

more detail." In truth, however, this "Amended Petition" amounted to a new claim of lack of jurisdiction due to alleged Speedy Trial Act violations—late indictment and delayed trial.

## II. ARGUMENT

### A. Defendant's § 2255 Motion Is Timely.

The one-year time limitation to file a § 2255 motion runs from the date on which the judgment of conviction becomes final, among other events not applicable here. 28 U.S.C. § 2255(f). A conviction becomes final when the opportunity for direct appeal is exhausted. *Clay v. United States*, 537 U.S. 522, 527-28 (2003). Where the conviction was affirmed on direct appeal and a petition for certiorari was filed, as here, the judgment becomes final when the Supreme Court denies the petition. *See, e.g., Washington v. United States*, 243 F.3d 1299, 1300 (11th Cir. 2001). Thus, Glenn's conviction became final on May 29, 2012. Glenn's § 2255 petition was filed by September 2012. His petition is timely.

### B. Glenn Received Effective Assistance of Counsel at All Stages of the Case.

#### 1. <u>Petitioner's Burden When Claiming Ineffectiveness of Counsel</u>.

In order to prevail on a claim of ineffective assistance of counsel, the defendant must show that: (1) his counsels made errors so serious that they were not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) his counsels' constitutionally ineffective performance affected the outcome of the case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). According to the Supreme Court, "judicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. To show that his counsels' unprofessional errors actually prejudiced his defense, Glenn has the burden of establishing that his "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. In other words, Glenn must show that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Glenn has not, and cannot, make that requisite showing as to any of his claims.

**2. Petitioner's Specific Claims of Ineffectiveness.**

*a.* ***Non-communication of plea offer****.*

Petitioner Glenn affirmatively states in his motion that no plea offer was made by the government in this one-count case. This is effectively correct, in that the only "offer" ever made was to let him plead guilty prior to the government seeking to label him as an Armed Career Criminal ("ACC") and agree to the statutory maximum of ten years imprisonment. At sentencing, the court acknowledged attorney Olbertz's discovery that Glenn's California drug trafficking conviction was only punishable by up to four years imprisonment, meaning that Glenn had only two of the three required predicate convictions to be considered as an ACC. Glenn also acknowledges in his petition that there was no "deal" for counsel to communicate to defendant, or recommend that he take. Even assuming that counsel failed to relay the "offer" and that Glenn would have taken it, he was sentenced to the same sentence as that "offer" anyway. Glenn was not prejudiced as to that issue and thus has no remedy available to him. *See Strickland*, 466 U.S. at 694.

*b.* ***Counsels not raising probation search issue****.*

Glenn next complains that attorneys Olbertz and Gombiner failed to raise or argue certain issues on appeal. He claims Olbertz erred in making other arguments against the legality of the search and defendant's statement to police, but failing to mention the probation issue. He claims Gombiner erred because he argued only the probation issue but did not "address arguments presented in [Olbertz's] opening brief." The two briefs combined addressed all the suppression issues that Glenn now says should have been presented to the appellate court. The Ninth Circuit

clearly considered both briefs, which was itself a windfall to Petitioner Glenn. Indeed, the appellate court withdrew its initial opinion after Gombiner filed his petition for rehearing.

The search issue was litigated before this Court by Attorney Ness during the hearing on the suppression motion filed by Attorney Campbell. As noted in Glenn's motion, Probation Officer Brady testified during that hearing that although he did not contact or search the defendant, he was aware of his identity and of his status as a probationer subject to search. As the Ninth Circuit noted in its opinion affirming the denial of Glenn's suppression motion, this Court made specific findings that Glenn was on probation and was thus subject to a probation search. The court correctly ruled that probation searches satisfy the demands of the Fourth Amendment in situations such as those present in this case. Counsel cannot be found to be incompetent or to have seriously erred by not arguing (or arguing but not prevailing on) issues where the law is entirely in the government's favor.

Finally, most matters already decided on appeal cannot be reconsidered on a collateral attack. *See United States v. Scrivner*, 189 F.3d 825, 828 (9th Cir. 1999). In this circuit the law is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a § 2255 motion. *Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972).

*c.* ***Un-raised sentencing objections****.*

Glenn complains that his counsel should have objected at sentencing, and raised as issues on appeal, his receiving four levels under the Sentencing Guidelines for altering serial numbers He claims this was never proved. He further claims that he erroneously received two criminal history points "for a misdemeanor."

Glenn has procedurally defaulted on these sentencing claims. Defendants may not raise claims on collateral review that were not raised on direct appeal. Section 2255, however, is not designed to provide criminal defendants multiple opportunities to challenge their sentence.

*United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993). "If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claim of error." *United States v. Frady*, 456 U.S. 152, 168 (1982).

The defendant has failed to explain which of his many convictions he was referring to in his petition. The government has found one conviction that was scored as two criminal history points when it may have been too old to score. A review of the defendant's revised Presentence Report (dated September 15, 2010) shows that two points were assessed on a May 19, 1996 drug conviction originally charged as possession/purchase for Sale Narcotic Control Substance, a felony, for which Glenn received a sentence of 180 days in jail followed by 36 months probation. The number of points would have been correctly calculated, but for the fact that the conviction appears to be too old.

Even ignoring his procedural default, Glenn must still lose on this issue. That outcome is required because subtracting two criminal points from his total of 20 points still leaves him with 18 points. Because the threshold for criminal history Category VI—the highest category—is only 13 points, removing those two points would have no effect on Glenn's sentencing range. Glenn's ineffectiveness claims therefore fail due to lack of prejudice.

Glenn claims that this Court erroneously included a four-level assessment for an unproven specific offense characteristic of the firearm having an obliterated serial number. However, the partial obliteration of the firearm's serial number was proven during ATF SA Wallace's trial testimony, and was discussed in the PSR. The assessment of a four-level upward adjustment was therefore warranted. *See* USSG § 2K2.1(b)(4) (B): "If any firearm . . . (B) had an altered or obliterated serial number, increase by 4 levels."

***d. Alleged grand jury problems and defective indictments.***

**i. Hearsay testimony.**

ATF Special Agent Byrd testified in the grand jury on both indictments. Special Agent Byrd, however, was not called to the stand to testify at the time of trial.

First, the government is free to prove its case at trial using witnesses of its choice. Second, hearsay testimony is allowed in the grand jury. *See Costello v. United States*, 350 U.S. 359, 363-64 (1956). Third, the government need not call grand jury witnesses at trial. *United States v. Daras*, 462 F.2d 361, 362 (9th Cir. 1972). Glenn's spurious allegations are frivolous and without merit.

**ii. SA Byrd's alleged perjury.**

Glenn makes much about a misstatement of the name of the officer who recovered the pistol from defendant's waistband. The mere unintentional misstatement of one officer's name in no way detracted from the probable cause that (1) the crime of a felon in possession of a firearm was committed, and (2) Glenn had committed it. The name of the seizing officer is not material, and the minor irrelevant error simply went unnoticed at the time by SA Byrd, the AUSA, and everyone else until eventually noticed by Petitioner Glenn. The baseless accusation of perjury is further belied by the fact that SA Byrd was not present when Glenn was arrested and his gun was seized. This fact makes it easier to understand how SA Byrd might have been mistaken about the name of the officer who recovered the gun.

**iii. Failure to answer grand juror's question.**

Glenn incorrectly alleges that SA Byrd invoked the Fifth Amendment privilege in "refusing" to answer a grand juror's question, and that this invalidated the whole grand jury process and its resulting indictment. First, SA Byrd never refused to answer any question. Rather, he was instructed not to answer it as the topic of the question was irrelevant to the grand

jury's decision. The jury's subsequent guilty verdict supports the grand jury's conclusion that they had found probable cause to indict the defendant.

**iv. Missing offense elements in indictment.**

Glenn claims the indictment was "defective" because elements were missing, but he offers no further explanation as to which necessary elements were missing. A review of the indictment shows that it did in fact allege the three necessary elements of the offense: (1) the defendant was a convicted felon, (2) who knowingly possessed a firearm, (3) which had previously traveled in interstate or foreign commerce.

**v. Missing ACCA elements.**

Glenn complains that the superseding indictment was defective and was improperly amended by this Court because the petit jury was not told of the ACC allegation and the government did not prove it at trial. Whether a defendant convicted of being a felon in possession of a firearm is subject to sentencing under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 1924(e)(1) is strictly a sentencing issue for the Court to decide at the time of sentencing.

***e. Jury instructions regarding requisite mens rea.***

Petitioner Glenn also argues that the government must not only prove his knowing possession of a firearm, but also that it was intentional and willful. The Court correctly instructed the jury on the elements of the offense and the requisite mental state that they had to find to convict. Commission of the crime requires no "act" other than knowing possession of a firearm by a convicted felon. *United States v. Beasley*, 346 F.3d 930, 934 (9th Cir. 2003). "To establish that a defendant acted 'knowingly' the prosecution need not prove that the defendant knew that his possession of the firearm was unlawful; the prosecution need only prove that the defendant consciously possessed what he knew to be a firearm." *Id*.

***f. Racial composition of trial jury.***

Petitioner alleges the government illegally used two preemptory strikes to remove two Asian jurors without legitimate, non-racially discriminative reasons. Glenn does not actually submit portions of the transcript to show that either of the Asian women was actually struck from the jury. Indeed, the page that he did submit merely shows that the government's request to excuse one juror for cause due to language issues was denied. Petitioner has thus failed to establish, as is his burden, that his claim of discrimination is actually supported by the true facts.

***g. "Meritorious defense" and "actual innocence."***

Glenn has no "meritorious defense" and he is not actually innocent. He does not explain how he could be actually innocent of the crime of felon in possession of a firearm when he was a five-time convicted felon who was caught with a loaded 9mm pistol in his waistband.

***h. Clearly erroneous findings by Ninth Circuit.***

Glenn makes a concerted effort to again litigate the search and seizure issues already addressed and affirmed on appeal. These arguments are frivolous.

***i. Speedy Trial Act (delayed indictment).***

The Speedy Trial Act ("STA"), codified at Title 18, United States Code, Section 3161 *et. seq*., requires that a defendant be indicted within thirty days of his arrest. The sanction for violating this provision is a dismissal of the indictment, either with or without prejudice, upon a motion by the defendant. 18 U.S.C. § 3162(a). But the STA itself says that such motions must be filed before trial. "Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." 18 U.S.C. § 3162(b). *See also Zedner v. United States,* 547 U.S. 489, 502-03 (2006). Contrary to the allegations in Glenn's § 2255 motion, the motion to extend the STA indictment, although stipulated by the government, was brought by defense counsel and Petitioner Glenn's

signature appears under the sentence, "I understand my right to require the indictment to be filed within 30 days and agree to waive that right in support of this motion."

**C. Other Claims Raised in Motion.**

**1. <u>DNA Testing of Biological Evidence</u>.**

Petitioner belatedly demands that the physical evidence be subjected to DNA testing pursuant to the Innocence Protection Act of 2004 ("IPA"), 18 U.S.C. § 3600:

> (a) In general. – Upon a written motion by an individual under a sentence of imprisonment or death pursuant to a conviction for a Federal offense (referred to in this section as the "applicant"), the court that entered the judgment of conviction shall order DNA testing of specific evidence <u>if</u> the court finds that <u>all</u> of the following apply:
>
> (1) The applicant asserts, under penalty of perjury, that the applicant is actually innocent of –
>
> (A) the Federal offense for which the applicant is under a sentence of imprisonment . . .
>
> (6) The applicant identifies a theory of defense that –
>
> (A) is not inconsistent with an affirmative defense presented at trial; and
>
> (B) <u>would establish the actual innocence</u> of the applicant of the Federal or State offense referenced in the applicant's assertion under paragraph (1).
>
> (7) If the applicant was convicted following a trial, the <u>identity of the perpetrator was at issue</u> in the trial.
>
> (8) The proposed DNA testing of the specific evidence may produce new material evidence that would –
>
> (A) support the theory of defense referenced in paragraph (6); and
>
> (B) <u>raise reasonable probability</u> that the applicant <u>did not commit the offense</u>.

U.S.C. § 3600(a) (emphasis added).

Whether or not other parts of the statute would also disqualify Glenn under the IPA, it is abundantly clear that paragraphs (7) and (8) make him ineligible to require this Court to order DNA testing of the firearm and ammunition. Identity was never an issue in this case, as the gun was removed from Petitioner Glenn's person. Additionally, it would not serve to exculpate

Glenn even if DNA testing did not locate his DNA on the gun, or found someone else's DNA instead, because he showed his guilt by acknowledging he had a pistol on his hip immediately before the gun was removed from his waistband. *See, e.g., United States v. Beasley*, 346 F.3d 930, 934 (9th Cir. 2003) ("To establish that a defendant acted 'knowingly,' the prosecution need not prove that the defendant knew that his possession of the firearm was unlawful; the prosecution need only prove that the defendant consciously possessed what he knew to be a firearm.").

## III. CONCLUSION

Mr. Glenn earned his sentence. He was convicted in a fair trial and he has exhausted all his remedies. His Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255 [Dkt. #1] and his Motion for Short-Tandem Repeat (STR) DNA Testing Pursuant to Innocence Protection Act, 18 U.S.C. §3600 [Dkt. #13], are **DENIED**.

Dated this 11th day of April, 2013.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE